IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

MARCUS BOALES,

    Petitioner,

v.                                                            No. 14-1093-JDB-egb

C.V. RIVERA,

    Respondent.

_____

ORDER DENYING PETITION PURSUANT TO 28 U.S.C. § 2241,
CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH, AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL
_____

On April 21, 2014, Petitioner, Marcus Boales, Bureau of Prisons register number 22883-076, who is currently an inmate at the Federal Correctional Institution in Forrest City, Arkansas ("FCI Forrest City"), filed a *pro se* application for writ of habeas corpus pursuant to 28 U.S.C. § 2241, along with a motion seeking leave to proceed *in forma pauperis*. (Docket Entry ("D.E.") 1; D.E. 2.) On April 23, 2014, the Court entered an order denying the motion to proceed *in forma pauperis* and directing Petitioner to pay the filing fee, which he did on May 8, 2014. (D.E. 4; D.E. 5.) The Clerk shall record the respondent as Warden C. V. Rivera.

I.     BACKGROUND

    A.     Federal Criminal Case Number 09-10041

On April 20, 2009, a federal grand jury returned a two-count indictment against Boales and a co-defendant, Antwain L. Spears. (Indictment, *United States v. Boales*, No. 09-10041-02-JDB (W.D. Tenn.), Criminal ("Cr.") D.E. 3.) On April 19, 2010, the grand jury returned a two-count superseding indictment that named a third co-defendant, Tracey Moore. (Superseding

Indictment, *id.*, Cr. D.E. 64.) The first count charged the defendants with conspiring with each other and with other persons to possess over 5 grams of cocaine base (crack cocaine) with the intent to distribute and to distribute over 5 grams of cocaine base (crack cocaine), in violation of 21 U.S.C. § 841(a)(1). The second count charged all defendants with aiding and abetting with each other, in possessing over 5 grams of cocaine base (crack cocaine) with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

The factual basis for these charges is stated in the presentence report ("PSR"):

5. According to information provided by the Assistant United States Attorney States Attorney responsible for the prosecution of this matter, during 2007-2008 officers with the Carroll County Sheriff's Department and the Drug Enforcement Administration Task Force were investigating an ongoing conspiracy to distribute crack cocaine in Carroll, Benton, and Henderson Counties in Tennessee. Over the course of the investigation, multiple individuals were identified as being involved in the conspiracy. Antwain Spears and **Marcus Boales** were among those identified as potential participants in the conspiracy.

6. On June 24, 2008 at approximately 6:30 p.m., Investigators Tim Meggs and David Bunn with the Carroll County Sheriff's [Department] accompanied two probation officers, Chris Duke and Burt Wells, to the residence of Antwain Spears, located at 2550 Purdy Road in Huntingdon, Tennessee. At that time, Mr. Spears had an active arrest warrant for failing a drug screen, which violated the terms of his parole. Upon arriving at the residence, the probation officers and investigators exited their vehicle and asked several individuals that were located outside near an outbuilding for Mr. Spears. Those individuals reported that Mr. Spears was not present in the outbuilding and could be inside the residence. However, Investigator Meggs, who was familiar with Mr. Spears, had observed Mr. Spears go into the outbuilding shortly after arriving at the residence.

7. Investigator Meggs walked to the outbuilding located at the residence and observed Antwain Spears, **Marcus Boales**, and several other individuals present there. Investigator Meggs informed Mr. Spears that the probation officers wished to speak with him and obtained consent from Mr. Spears to clear the outbuilding for officer safety reasons. Once the investigators entered the outbuilding, they noticed a piece of a plastic baggy with white residue, a bag containing eight small bags of a hard rock-like substance, and two small bags of marijuana in plain view. The bag containing the hard rock-like substance field tested positive for crack cocaine.

8. After finding the items of contraband in the outbuilding, Investigator Meggs spoke to Mr. Spears' girlfriend and asked her if there was anyone else inside the residence, to which she replied that there was not. A short while later, Investigator Meggs noticed another individual exit the residence. Subsequently, officers entered the home and cleared the area for officer safety. Investigator Meggs informed Mr. Spears' girlfriend that he was going to obtain a search warrant and advised all of the individuals present at the scene to remain outside. At that time, **Marcus Boales** was granted permission to leave the residence by Investigator Meggs and left the area.

9. While Investigator Meggs was away from the scene obtaining a search warrant, **Marcus Boales** returned and informed Sergeant Lee Bates that the marijuana and crack cocaine that was found inside the outbuilding of the residence belonged to him. **Mr. Boales** was subsequently placed in the back of a squad car for further investigation. When Investigator Meggs returned to the residence with a search warrant, **Mr. Boales** spoke with him and reiterated his admission that the drugs located in the outbuilding were his.

10. After Investigator Meggs returned with a search warrant, officers searched the inside of the residence for contraband. Officers located a bag of crack cocaine and a bag of marijuana inside of a flashlight in a vase in the living room of the home. Officers also located a set of digital scales in the living room. After the items were seized as evidence, Mr. Spears spoke with Investigator Meggs and admitted that the items found inside of the residence belonged to him. When Investigator Meggs asked Mr. Spears how he could be sure that the contraband found in the home belonged to him and not to his girlfriend, Mr. Spears repeated that the items were his and correctly told Investigator Meggs exactly where the narcotics had been discovered.

11. On August 4, 2008, the Tennessee Bureau of Investigation Memphis Crime Laboratory issued an official forensic chemistry report regarding the substances retrieved from the defendants in this case on June 24, 2008. The results were as follows:

| Exhibits | Controlled Substance | Schedule | Amount |
| --- | --- | --- | --- |
| 01-a | Cocaine base | II | 20.3 grams |
| 01-b | Marihuana | VI | 6.8 grams |
| 02-a | Cocaine base | II | 20.1 grams |
| 02-b | Marihuana | VI | 12.7 grams |

Exhibits 01-a and 01-b consisted of the narcotics that were retrieved from the outbuilding adjacent to the residence. Exhibits 02-a and 02-b consisted of the narcotics that were retrieved from inside the residence.

(PSR ¶¶ 5–11.)

On August 17, 2010, pursuant to a written Plea Agreement, Boales plead guilty to Count 1 of the Superseding Indictment. (Min. Entry, *United States v. Boales*, No. 09-10041-02-JDB (W. D. Tenn.), Cr. D.E. 94; Plea Agreement, *id.*, Cr. D.E. 95.) On March 23, 2012, the Court sentenced him as a career offender to a term of imprisonment of one hundred forty-five months, to be followed by a four-year period of supervised release.[1] (Min. Entry, *id.*, Cr. D.E. 193.) Judgment was entered on March 28, 2012. (J., *id.*, Cr. D.E. 195.) Boales did not appeal, having waived his right to do so in the Plea Agreement.

On September 14, 2012, Petitioner filed a pro se motion pursuant to 18 U.S.C. § 3582(c) seeking a reduction in his sentence pursuant to the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010). (Motion ("Mot."), *id.*, Cr. D.E. 199.) The Court denied relief in an order issued on March 7, 2013. (Order, *id.*, Cr. D.E. 201.)

B. Case No. 12-1230

On October 11, 2012, Boales filed a *pro se* motion pursuant to 28 U.S.C. § 2255, accompanied by a legal memorandum. (Mot., *United States v. Boales*, No. 12-1230-JDB-egb (W. D. Tenn.), D.E. 1, Memorandum ("Mem."), D.E. 1-1.) In his motion, he argued that the Supreme

---

[1] The 2010 version of the Guidelines Manual was used for sentencing purposes. (PSR ¶ 15.) Boales was sentenced on the basis of the drugs found in the outbuilding, consisting of 20.3 grams of cocaine base and 6.8 grams of marijuana. The cocaine base was converted to a marijuana equivalent for sentencing. Pursuant to the drug equivalency tables found in the commentary to § 2D1.1 of the United States Sentencing Guidelines ("U.S.S.G."), one gram of cocaine base is equivalent to 3571 grams of marijuana. Boales was responsible for 20.3 grams of cocaine base, which the PSR calculated to be equivalent to 72.4913 kilograms of marijuana. Thus, Boales was sentenced on the basis of 72.4981 kilograms of marijuana. Pursuant to U.S.S.G. § 2D1.1(c)(9), the base offense level for a drug offense involving between 60 and 80 kilograms of marijuana is 22. Because he had more than two prior convictions for controlled substance offenses, Boales qualified as a career offender under U.S.S.G. § 4B1.1. Therefore, his offense level was 34 and, after the reduction for acceptance of responsibility, the offense level was 31. A career offender's criminal history category is always VI. The guideline sentencing range was 188–235 months. The Court granted the Government's § 5K1.1 motion, (Cr. D.E. 181), and reduced Boales' offense level by three levels, to 28, with a resulting sentencing range of 140–175 months.

4

Court's decision in *Dorsey v. United States*, ___ U.S. ___, 132 S. Ct. 2321 (2013), represented an intervening change in the law that required a reduction in his sentence under the Fair Sentencing Act of 2010. (Mot., *id.*, D.E. 1 at 4; Mem., D.E. 1-1.) On December 18, 2013, the Court denied the motion for lack of merit, denied a certificate of appealability, and certified any appeal would not be taken in good faith. (Order, D.E. 5.) Boales filed a notice of appeal, (Notice of Appeal, *id.*, D.E. 7), but later voluntarily dismissed it. (Order, *id.*, D.E. 11.)

    C.    Boales § 2241 Petition

Boales contends that he is actually innocent of his career offender enhancement because he does not have more than two prior convictions for controlled substance offenses. (D.E. 1 at 4.)

II.    ANALYSIS

Federal prisoners may obtain habeas corpus relief pursuant to 28 U.S.C. § 2241 only under limited circumstances. The "savings clause" to § 2255 provides as follows:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255(e).

> Construing this language, courts have uniformly held that claims asserted by federal prisoners that seek to challenge their convictions or imposition of their sentences shall be filed in the sentencing court under 28 U.S.C. § 2255, and that claims seeking to challenge the execution or manner in which the sentence is served shall be filed in the court having jurisdiction over the prisoner's custodian under 28 U.S.C. § 2241.

*Charles v. Chandler*, 180 F.3d 753, 755-56 (6th Cir. 1999) (per curiam) (citations omitted). In this case, Petitioner is attacking the imposition of his sentence and, therefore, habeas relief is not

available to him unless relief under § 2255 is inadequate or ineffective. Boales carries the burden of demonstrating that the savings clause applies. *Id.* at 756.

The Sixth Circuit has construed the savings clause narrowly:

> Significantly, the § 2255 remedy is not considered inadequate or ineffective simply because § 2255 relief has already been denied, or because the petitioner is procedurally barred from pursuing relief under § 2255, or because the petitioner has been denied permission to file a second or successive motion to vacate.

*Id.* (citations omitted). After its decision in *Charles*, the Sixth Circuit reemphasized the narrow scope of the savings clause:

> The circumstances in which § 2255 is inadequate and ineffective are narrow, for to construe § 2241 relief much more liberally than § 2255 relief would defeat the purpose of the restrictions Congress placed on the filing of successive petitions for collateral relief. As we explained in *Charles*, "[t]he remedy afforded under § 2241 is not an additional, alternative or supplemental remedy to that prescribed under § 2255."

*United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001) (quoting *Charles*, 180 F.3d at 758) (additional citation omitted).

A prisoner can obtain relief under § 2241 only if he is "actually innocent" of the crime of which he has been convicted. *See Martin v. Perez*, 319 F.3d 799, 804–05 (6th Cir. 2003); *Charles*, 180 F.3d at 757 ("No circuit court has to date permitted a post-AEDPA petitioner who was not effectively making a claim of 'actual innocence' to utilize § 2241 (via § 2255's 'savings clause') as a way of circumventing § 2255's restrictions on the filing of second or successive habeas petitions."). "Actual innocence means factual innocence." *Paulino v. United States*, 352 F.3d 1056, 1061 (6th Cir. 2003) (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

The Sixth Circuit has not permitted prisoners to use the savings clause to attack their sentences. *See Bannerman v. Snyder*, 325 F.3d 722, 724 (6th Cir. 2003) ("A challenge to a sentence based on *Apprendi* cannot be the basis for an actual innocence claim under *Martin*."); *Peterman*, 249 F.3d at 460–62 (holding that challenges that a sentence is not supported by

"adequate factual findings" do not fall within the savings clause); *see also Hayes v. Holland*, 473 F. App'x 501, 502 (6th Cir. 2012) (per curiam) ("Hayes does not assert that he is actually innocent of his federal offenses. Rather, he claims actual innocence of the career offender enhancement. The savings clause of section 2255(e) does not apply to sentence claims."); *Jones v. Castillo*, 489 F. App'x 864, 866 (6th Cir. 2012) (per curiam) ("Jones argues that the exception applies to his first claim because the Supreme Court narrowed the definition of what constitutes a violent felony for purposes of determining armed career criminal status in *Begay v. United States*, 553 U.S. 137 (2008). Under this new law, he argues, he is actually innocent of being an armed career criminal. However, he does not argue that he is actually innocent of being a felon in possession of a firearm. Claims alleging 'actual innocence' of a sentencing enhancement cannot be raised under § 2241."), *cert. denied*, 133 S. Ct. 1632 (2013); *Raymer v. Barron*, 82 F. App'x 431, 432 (6th Cir. 2003) (order) ("In this case, Raymer has presented only a challenge to his sentencing under the ACCA, not a claim that he is actually innocent of possession of a firearm by a felon. Therefore, the district court properly concluded that the claim presented could not be addressed under § 2241."); *Green v. Hemingway*, 67 F. App'x 255, 257 (6th Cir. 2003) ("[T]he 'actual innocence' exception of the savings clause of § 2255 is actual innocence of the underlying, substantive offense, not 'innocence' of a sentencing factor.") (additional internal quotation marks omitted); *Kellogg v. Snyder*, 48 F. App'x 114, 115–16 (6th Cir. 2002) (rejecting challenge to sentence as a career offender under § 2241 because prisoner did not show that § 2255 remedy was inadequate or ineffective).

Boales is not entitled to relief on this § 2241 petition for two reasons. First, as previously noted, the claims asserted in this petition challenge his conviction and the imposition of his sentence. Second, he has no valid argument that he is actually innocent of the offense for which

he is currently serving time. Boales pled guilty and he has presented nothing that undermines his conviction.

Because Boales is not entitled to invoke § 2241, "it appears from the application that the applicant or person detained is not entitled" to any relief. 28 U.S.C. § 2243. An order for Respondent to show cause need not issue. The petition is DISMISSED, and judgment shall be entered for Respondent.

III.  APPEAL ISSUES

Federal prisoners who file petitions pursuant to 28 U.S.C. § 2241 challenging their federal custody need not obtain certificates of appealability under 28 U.S.C. § 2253(c)(1). *Durham v. United States Parole Comm'n*, 306 F. App'x 225, 229 (6th Cir. 2009); *Melton v. Hemingway*, 40 F. App'x 44, 45 (6th Cir. 2002) ("[A] federal prisoner seeking relief under § 2241 is not required to get a certificate of appealability as a condition to obtaining review of the denial of his petition"); *see also Witham v. United States*, 355 F.3d 501, 504 (6th Cir. 2004) (noting that 28 U.S.C. § 2253 "does not require a certificate of appealability for appeals from denials of relief in cases properly brought under § 2241, where detention is pursuant to federal process").

A habeas petitioner seeking to appeal must pay the $505 filing fee required by 28 U.S.C. §§ 1913 and 1917. To appeal *in forma pauperis* in a habeas case under 28 U.S.C. § 2241, the petitioner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997). Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave

to appeal *in forma pauperis*, the petitioner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a)(4)–(5).

In this case, because Petitioner is clearly not entitled to relief, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is DENIED. If Petitioner files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the United States Court of Appeals for the Sixth Circuit within thirty (30) days.

IT IS SO ORDERED this 8th day of April 2015.

s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE